In re Petition for DISCIPLINARY AC-
TION AGAINST Fred A. REITER, an
Attorney at Law of the State of Minne-
sota.

No. C4–91–157.

Supreme Court of Minnesota.

Aug. 7, 1997.

John C. McNulty, Charlotte M. Reed, McNulty & Wallace, St. Paul, for appellant.

Patrick R. Burns, St. Paul, for respondent.

## OPINION

PER CURIAM.

This attorney discipline case involves several charges of unprofessional conduct against an attorney who has been disciplined some nine times since his admission to practice in 1974.[1] Given the relatively minor rule

---

1. On June 21, 1977, Reiter was issued a warning for neglect of a civil suit and failure to communicate with a client. Reiter was also issued a separate warning that day for improper solicitation of litigation. On October 20, 1980, Reiter was issued a warning for failure to pay a court reporter's fee. On September 19, 1983, Reiter was issued an admonition for neglect of a legal matter. On October 12, 1987, Reiter was issued an admonition for failing to satisfy a judgment against him for court reporting fees. On November 26, 1990, Reiter was issued an admonition for practicing law while suspended for nonpayment of his attorney registration fee. On March 20, 1991, Reiter was issued an admonition for failing to return a file to a client. On July 12, 1991, Reiter was publicly reprimanded and placed on probation for two years for comming-

violations at issue in the current proceeding, we order that the attorney, Fred A. Reiter, be publicly reprimanded and placed on probation for two years.

The Director of the Office of Lawyer's Professional Responsibility Board (Director) petitioned this court to take disciplinary action against Reiter, alleging several violations of the Rules of Professional Conduct, based upon six separate events. The alleged violations include failure to pay a law-related debt, improper handling of trust accounts, failure to properly maintain trust account books and records, and false certification to this court that proper trust account books and records were kept.

■■■ After a disciplinary hearing, the referee recommended that Reiter be suspended from the practice of law for 30 days and that upon reinstatement, he be subject to supervised probation for two years.[2] On appeal to this court, Reiter contests certain findings of fact and conclusions of law made by the referee and further argues that suspension is not warranted for the alleged violations of professional conduct. In general, this court will not reverse the findings and conclusions of the referee in a disciplinary hearing unless they are clearly erroneous. *In re Gurstel,* 540 N.W.2d 838, 840 (Minn. 1995). Furthermore, this court generally gives great weight to the recommendation made by the referee as to discipline. However, the final responsibility for determining the appropriate discipline for attorney mis-

conduct rests solely with this court. *In re Hartke,* 529 N.W.2d 678, 683 (Minn.1995). Thus, in this case, we consider the referee's factual findings to determine whether they are clearly erroneous and we examine the recommended discipline to determine if it is appropriate, in light of the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the potential harm to the public, and the harm to the legal profession. *See In re Haugen,* 543 N.W.2d 372, 375 (Minn.1996).

### Failure to Pay Court Reporter

■■■ It is uncontested that Reiter failed to pay a court reporter for work associated with two depositions Reiter took on behalf of his client Ritter, until after a judgment had been entered against him. The depositions were taken in September 1992. The court reporter sent Reiter a bill totaling $163 for the transcripts of those depositions and Reiter subsequently sent a bill to Ritter that included, among other fees, a charge for this bill from the court reporter. By December 1992, Ritter had paid that bill in full to Reiter. However, Reiter failed to pay the court reporter's fee and the court reporter sued Reiter in conciliation court to collect the fee. In March 1994, a judgment was entered but Reiter did not pay the judgment until November 1994, several months after the court reporter had filed a complaint against him with the Lawyers Professional Responsibility Board (LPRB). Reiter claimed that he did

ling personal and client funds in his trust account, disbursing client funds from his trust account to clients prior to the deposit of funds on their behalf, failing to maintain proper trust account books and records, false certification to the supreme court that his books and records were properly maintained, failure to preserve his trust account books and records for the requisite period of time, and failing to arrange for the payment of interest to his trust account and the remittance of the interest to the Lawyers Trust Account Board. On February 29, 1996, Reiter was issued an admonition for failing to include the required language regarding a nonrefundable retainer in a fee agreement with his client.

2. The referee concluded that Reiter's failure to pay a law-related debt until after the entry of judgment and the filing of a complaint with the Lawyers Professional Responsibility Board against him violated Rules 8.4(c) and (d) of the

Minnesota Rules of Professional Conduct (MRPC). However, as to the other incidents of alleged misconduct, the referee reached only a summary conclusion that Reiter's conduct in issuing trust account checks on behalf of clients when there were insufficient funds attributable to his clients on deposit in his trust account, in paying business expenses from the trust account, in failing to maintain appropriate trust account books and records, and in falsely certifying to the court that he maintained proper books and records, constituted violations of Rules 1.15(a), 1.15(g), 1.15(h), and 8.4(c) of the MRPC, and Lawyers Professional Responsibility Board Opinion No. 9. He did not specifically indicate which rule or rules were violated in each incident. Therefore, in analyzing the referee's legal conclusions, we have been forced to conjecture as to the specific rule violations he attributed to each separate incident.

not pay the court reporter's fee earlier because of dire financial circumstances.[3]

The referee concluded that Reiter's failure to pay the law-related debt until after the entry of a judgment and the filing of a complaint against him constituted a violation of Rules 8.4(c) and (d) of the Minnesota Rules of Professional Conduct (MRPC). Although Reiter does not dispute the facts underlying this conclusion, he argues that his conduct did not constitute a violation of either Rule 8.4(c) or (d).

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Minn. R. Prof. Conduct 8.4(d). The comment to Rule 8.4 further states that lawyers are professionally answerable for offenses that constitute a "serious interference with the administration of justice." Minn. R. Prof. Conduct 8.4, cmt. This court has previously held that the failure to pay law-related debts constitutes a violation of Rule 8.4(d) and warrants discipline. *In re Pokorny*, 453 N.W.2d 345, 347–48 (Minn.1990) (failure to pay court-ordered fees and conciliation court judgments for law-related debts violates Rules 8.4(c) and (d) and warrants disciplinary action); *In re Ruffenach*, 486 N.W.2d 387, 390–91 (Minn.1992) (a lawyer's willful failure to pay law-related debts whose validity is not in dispute is professional misconduct and warrants discipline).

Reiter's repeated failure to pay court reporter fees clearly establishes an indifference to legal obligation and serious interference with the administration of justice in violation of Rule 8.4(d). Because we conclude that

Reiter's conduct on this matter violated Rule 8.4(d) of the MRPC, we need not reach the issue of whether it also violated Rule 8.4(c).

### Mismanagement of Client Funds

◼ The next matter involves the allegation that Reiter issued checks on behalf of two clients before deposits were made in their trust accounts to cover the checks. As to the first client, Reiter testified that on July 6, 1992, he received a check for $720 in favor of his client Halvorson. On July 9, 1992, Reiter wrote a check for $720 to Halvorson, but, according to his testimony, on July 20, 1992, he discovered that he had forgotten to deposit the Halvorson check and he made the deposit later that day.

In another incident, Reiter issued two checks totaling $70 to pay bills on behalf of his client Amhrien in September 1994. However, at the time the checks were issued, there were no funds to cover them and the shortage remained through December 1994, at least. Thus for a period of at least three months, funds belonging to other clients were being used to pay bills incurred on behalf of Amhrien.

As to these incidents, the referee apparently concluded that Reiter's actions constituted professional misconduct in violation of Rule 1.15(a) of the MRPC.[4] Reiter argues that the Halvorson matter is not properly before this court as a basis of discipline because the Director knew of this matter when his prior probation was closed July 12, 1993, yet the Director chose not to discipline him at that time. The Director responds

---

**3.** Reiter provided evidence that during this period, he was unable to pay rent for his office and was served with an eviction summons in November 1993, he was unable to pay his gas bill at home and received a disconnection notice in October 1993, he was behind on his home mortgage payments and received a notice of foreclosure in October 1994, and he owed the IRS about $41,000, which was paid in July 1995. Reiter further provided evidence that he suffered from a heart condition and an ear infection that affected his productivity and his ability to recover from financial problems.

**4.** Rule 1.15(a) of the MRPC provides as follows:
All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable interest bearing trust accounts as set forth

in paragraphs (c) through (f). No funds belonging to the lawyer or law firm shall be deposited therein except as follows:
   (1) funds of the lawyer or law firm reasonably sufficient to pay service charges may be deposited therein.
   (2) funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
Minn. R. Prof. Conduct 1.15(a).

that the decision to forego disciplinary action at the close of Reiter's probation does not preclude the imposition of discipline for that misconduct in these proceedings.

From January 31, 1992 to October 30, 1992, Reiter was on probation for prior professional misconduct and his trust account was being audited by the LPRB during that period. On July 20, 1993, a representative of the LPRB sent Reiter a letter notifying him that the LPRB was closing his probation file. The letter stated that, although Reiter was now maintaining proper trust account books and records, he should not withdraw funds on behalf of a client before that client's funds were deposited in the appropriate trust account. In a memorandum attached to the letter, the Halvorson matter at issue in this appeal was specifically noted as an example of Reiter's improper withdrawal of funds. The memorandum was addressed to the Director and noted that "[t]he remaining deficiencies do not seem serious enough to revoke probation or extend it. A letter, referencing this memo and reminding him of the correct way to handle client money seems appropriate."

■ Rule 19(b)(1) of the Rules on Lawyers Professional Responsibility (RLPR) provides that "[c]onduct considered in previous lawyer disciplinary proceedings * * * is inadmissible if it was determined in the proceedings that discipline was not warranted, except to show a pattern of related conduct the cumulative effect of which constitutes an ethical violation." Rule 19(b)(1), RLPR. Because deficiencies discovered during a probationary audit could potentially be the basis for revoking or extending probation, the audit is considered to be a disciplinary proceeding within the meaning of Rule 19(b)(1). Inasmuch as the Halvorson matter was known to the Director prior to the completion of the prior probation and was not acted upon, we conclude that the Halvorson matter is not properly before this court as a separate basis of discipline in itself.

■ However, the referee could have considered it as part of a pattern of conduct amounting to an ethical violation. *See* Rule 19(b)(1), RLPR; *In re Pearson,* 383 N.W.2d 689, 691 n. 1 (Minn.1986) (violations for which sanctions were already decided can be used to demonstrate a pattern of conduct indicating the respondent's level of professional responsibility). The record in this case and in the prior Reiter disciplinary matters establishes a pattern of disbursing funds from a trust account prior to the deposit of funds necessary to cover the disbursal.[5] Thus, while the Halvorson matter could not be an independent basis for discipline, it could be considered part of a pattern of behavior amounting to professional misconduct.

■ With regard to the Amhrien matter, Reiter claims that the error resulted from a miscommunication with his secretary. However, this court has repeatedly held that an attorney's obligation to maintain trust accounts goes beyond a requirement to refrain from intentional wrongdoing. *In re Porter,* 449 N.W.2d 713, 718 (Minn.1990); *In re Kinnunen,* 502 N.W.2d 773, 775 (Minn.1993). Although the Amhrien matter may have been unintentional error, it is nevertheless grounds for discipline.

■ Reiter further argues that he did not deposit his own money into Amrhien's account to cover the checks because he thought that would have amounted to the improper commingling of funds. However, the restoration of shortages created by the improper withdrawal of funds from trust accounts has never been regarded as improper commingling of funds. Consequently, the referee did not err in concluding that the Amhrien matter warranted discipline.

Thus, as to the two incidents involving the mismanagement of client funds, we conclude that under Rule 19(b)(1), RLPR, the Halvorson matter is appropriately considered as part of a pattern of misconduct in violation of Rule 1.15(a) of the MRPC and that the referee properly concluded that the Amhrien mat-

---

5. Reiter was publicly reprimanded in July 1991, partly based on such misconduct. Then in July 1993, in the letter closing his probation file, Reiter was cautioned about the same misconduct in regard to the Halvorson matter. Finally, in March 1996, Reiter was again charged with similar misconduct regarding the Amhrien matter at issue in this proceeding.

ter also constituted a violation of Rule 1.15(a) of the MRPC.

### Banking Charges

The next matter at issue in this case involves erroneous charges made against Reiter's trust account for check charges and safe deposit box fees associated with his business banking matters. Periodically from September 1993 to October 1994, the bank erroneously charged his trust account a total of $121.63. Reiter testified that when he detected the erroneous charges, he called the bank and was assured that the error would be corrected. However, Reiter said, it took the bank much longer to correct its error than he had anticipated. In the meantime, Reiter testified, he did not deposit any money to reimburse the account for the bank's error because it was the bank's error and because he thought the deposit of personal funds would amount to an improper commingling of funds.

Reiter challenges the referee's conclusion that business expenses were paid from his trust account. However, the record clearly establishes that from September 1993 to October 1994, Reiter's trust account was periodically debited for his check charges and for his use of a safe deposit box. Although Reiter claims this was the bank's error, Reiter did not deposit any money to cover the deficit until the matter was corrected by the bank. Thus, for several months, in essence, client funds were being used to pay for Reiter's business expenses. We have held that an attorney remains responsible for unintentional acts of misappropriation regardless of how innocuous they may be. *Porter*, 449 N.W.2d at 718. However, while the failure to deposit personal funds to cover the erroneous charges may have been a technical violation of Rule 1.15(a) of the MRPC, given Reiter's repeated efforts to resolve the prob-

lem, we decline to impose discipline based on this incident.

### Trust Account Reconciliations

The next matter involves the Director's allegation that from September 1993 to February 1994, Reiter failed to maintain monthly reconciliations of his trust account books and records. The referee apparently concluded that such conduct violated Rule 1.15(g) of the MRPC[6] and LPRB Opinion No. 9. Reiter stated that he was unable to do monthly reconciliations during this period because he could not afford a secretary at the time. However, Reiter argues, because he eventually performed those reconciliations, he maintained his books and records in compliance with Rule 1.15(g) of the MRPC and LPRB Opinion No. 9.

Opinion No. 9 establishes the standard by which attorneys must maintain books and records in accordance with the MRPC. It is stated throughout the opinion that monthly reconciliations are required, including a monthly trial balance of the subsidiary ledger, a monthly reconciliation of the bank statement with the cash, checking, and subsidiary ledger balance, and a monthly reconciliation of the cash balance. LPRB Opinion No. 9. We agree with the Director that the requirement for "monthly reconciliation[s]" means that such accounting must be conducted at monthly intervals so as to promptly detect and correct any problems with the trust account funds. Reiter's assertion that monthly reconciliations need not be done contemporaneously on a monthly basis under Opinion No. 9 is erroneous and would likely result in numerous trust account violations. Consequently, Reiter's failure to maintain monthly reconciliations for a period of four months constitutes a violation of both Rule 1.15(g) of the MRPC and LPRB Opinion No. 9.

---

6. Rule 1.15(g) of the MRPC provides as follows:
   Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law, and to establish compliance with paragraphs (a) through (e). The books and records shall be preserved for at least six years following the end of the taxable year to which they relate or, as to books and records relating to funds or property of clients, for at least six years after completion of the employment to which they relate.
   Minn. R. Prof. Conduct 1.15(g).

## Attorney Registration Statements

The final matter at issue in this case concerns annual attorney registration statements Reiter submitted to this court in 1992, 1993, and 1994. In accordance with Rule 1.15(h) of the MRPC, Reiter certified each year that he was in compliance with Rule 1.15(g).[7] The referee apparently concluded that the certifications violated Rules 1.15(h) and 8.4(c) of the MRPC. However, we conclude that only the 1994 certification was false, because the 1992 and 1993 certifications covered time periods during which Reiter's compliance with trust account requirements was certified by LPRB or other external audit.[8] We agree with the referee's conclusion that Reiter's 1994 false certification was a violation of Rules 1.15(h) and 8.4(c) of the MRPC.

In summary, we conclude that Reiter's failure to pay the court reporter fee amounted to a violation of Rule 8.4(d) of the MRPC, that his mismanagement of client funds violated Rule 1.15(a) of the MRPC, that his failure to maintain monthly trust account reconciliations violated Rule 1.15(g) of the MRPC and LPRB Opinion No. 9, and that his false trust account certification to this court violated Rules 1.15(h) and 8.4(c) of the MRPC.

### Appropriate Discipline

■ Given the multiple violations of professional conduct, which include failure to pay a law-related debt, trust account violations, failure to maintain monthly reconciliations, and false certification to this court, we now turn to the question of what discipline is appropriate to impose on Reiter.

■ The referee recommended that Reiter be suspended from the practice of law for 30 days and then subject to supervised probation for two years to ensure the appropriate maintenance of his trust account books and records. As noted earlier, in assessing appropriate discipline, this court takes into account the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the potential harm to the public and the harm to the legal profession. *Haugen*, 543 N.W.2d at 375. Further, when an attorney has previously been disciplined for attorney misconduct, the determination for discipline in the present proceedings must be reviewed in light of earlier misconduct. *In re Strid*, 487 N.W.2d 891, 895 (Minn.1992); *In re Jensen*, 542 N.W.2d 627, 632 (Minn. 1996).

Reiter's similar past misconduct is an aggravating factor in this case. *See In re Isaacs*, 451 N.W.2d 209, 212 (Minn.1990) (stating similar misconduct after discipline considered aggravating factor). Reiter has twice before been disciplined for the specific violation of failure to pay court reporter fees. Similarly, Reiter was reprimanded in 1991 for some of the same types of violations at issue in this matter, including the disbursal of funds from the trust account to clients prior to the deposit of funds on their behalf, the failure to maintain proper trust account books and records, and the false certification to this court that his records were properly maintained.

■ Reiter argues that any violations he may have committed were mitigated by his financial hardship. Financial difficulties alone do not mitigate misconduct. *See also In re Olsen*, 487 N.W.2d 871, 875 (Minn.

7. Rule 1.15(h) of the MRPC provides as follows: "Every lawyer subject to paragraph (g) shall certify, in connection with the annual renewal of the lawyer's registration and in such form as the Clerk of the Appellate Court may prescribe, that the lawyer or the lawyer's law firm maintains books and records as required by paragraph (g)."

8. The first certification at issue was made on August 21, 1992. At that time, Reiter was being audited by the LPRB and his compliance with Rule 1.15(g) was verified by the Director's letter dated July 20, 1993. The letter states that Reiter's trust records were audited for the period of January 31, 1992 through October 30, 1992 and that he was maintaining proper trust account books and records at that time. Thus, Reiter's 1992 certification was valid.

The second certification at issue was made on August 25, 1993. This certification was similarly validated by a CPA who audited Reiter's trust account from November 1, 1992 to May 31, 1993 and stated that his trust records were in compliance with Opinion No. 9. Nothing in the record indicates that Reiter failed to maintain proper records for three months after the CPA's certification. Thus, Reiter's 1993 certification to this was valid.

1992); *In re Sahr,* 444 N.W.2d 290, 293 (Minn.1989). However, this court has recognized that an attorney's misconduct may be mitigated by cooperation with the investigation of the misconduct, the lack of any attempt to conceal the misconduct, and the attorney's attempts to ameliorate the problem. *In re Singer,* 541 N.W.2d 313, 316· (Minn.1996). Reiter's misconduct is mitigated by all of the above factors. The Director conceded during oral arguments that Reiter fully cooperated with the investigation. Furthermore, in many instances, Reiter acknowledged his mistakes and did not try to conceal any of his errors. Finally, Reiter attempted to ameliorate his problems by, for instance, eventually paying the court reporter fee, depositing sufficient funds into his clients' accounts, having an accountant bring his books and records into proper order, and having the bank correct the error made with regard to improper charges made against his trust account.

This court has previously recognized that suspension of any length is harsh, particularly for a sole practitioner like Reiter. *See Jensen,* 542 N.W.2d at 634; *Ruffenach,* 486 N.W.2d at 391. Given the nature of the misconduct at issue here, we conclude that the referee's recommendation of suspension is not warranted and is not necessary to protect the public or the legal profession. Rather, a public reprimand followed by a two-year supervised probation is appropriate discipline to impose on Reiter.

Therefore, it is the judgment of this court:

1. That respondent Fred A. Reiter is hereby publicly reprimanded and placed on probation for a period of two years commencing with the date of this order, pursuant to Rule 15, Rules on Lawyers Professional Responsibility.

2. That the terms of Reiter's probation shall be as follows:

a. Reiter shall abide by the Minnesota Rules of Professional Conduct (MRPC). Reiter shall cooperate with the Director's investigation of any allegations of professional misconduct which have or may come to the Director's attention. Any admission or referee finding of further misconduct during this probationary period shall constitute conclusive evidence of a breach of this probation.

b. Reiter shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation and promptly respond to the Director's correspondence by the due date or within 10 days of the date of communication. Upon the Director's request, Reiter shall provide authorization for release of information and documentation to verify his compliance with the terms of this probation.

c. Reiter shall maintain books and records concerning law office income and expenses, and funds held on behalf of clients, in compliance with the MRPC and Lawyers Professional Responsibility Board (LPRB) Opinion No. 9. Such books and records shall, upon request, be subject to review by the Director.

d. Within two weeks of the date of this order, Reiter shall retain a certified public accountant to review his books and records and establish an accounting system to ensure that he is in compliance with the provisions of the MRPC and LPRB Opinion No. 9. Within one month of this order, Reiter shall provide to the Director written certification from the accountant that his books and records are currently in compliance with the MRPC and LPRB Opinion No. 9.

e. On the first day of each month Reiter shall make all books and records pertaining to his trust account available to the certified public accountant and at least once per quarter the accountant shall submit to the Director's Office a letter verifying that monthly reconciliations have been made and that all trust account records have been maintained properly in accordance with the MRPC and LPRB Opinion No. 9. The first such letter shall be due 30 days from the date of this order. Thereafter, a report shall be due on a quarterly basis until the end of the probation.

3. That Reiter shall pay to the Director the sum of $900 in costs and $80 in disbursements, pursuant to Rule 24, Rules on Lawyers Professional Responsibility.