In re Petition for DISCIPLINARY ACTION AGAINST Clark Calvin GRIFFITH II, a Minnesota Attorney, Registration No. 175638.

No. A12–2124.

Supreme Court of Minnesota.

Nov. 5, 2013.

### ORDER

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent Clark Calvin Griffith II committed professional misconduct warranting public discipline. The allegations of professional misconduct relate to respondent's conduct with respect to a law student he had taught and was supervising in an independent clinic. The matter was referred to a referee. In the findings of fact, conclusions of law, and recommendation for discipline, the referee found that respondent: (1) made unwelcome comments about the student's appearance; (2) engaged in unwelcome physical contact of a sexual nature with the student; and (3) attempted to convince the student to recant complaints she had made to authorities about him. The referee also found, as an aggravating factor, that respondent took advantage of the student while in a position of authority over her. The referee concluded that respondent violated Minn. R. Prof. Conduct 8.4(b), (d), and (g) and recommended that respondent be suspended for 90 days and that he be allowed to be reinstated by affidavit.

The parties then entered into a stipulation in which they agreed that the referee's findings and conclusions are conclusive. They also waived their right to briefing and oral argument before this court. The parties recommended that the court impose the referee's proposed discipline. Respondent acknowledged, however, that that the court "may impose any of the sanctions set forth in Rule 15(a)(1)-(9), Rules on Lawyers Professional Responsibility (RLPR), including making any disposition it deems appropriate."

The court issued an order to show cause, directing the parties to file memoranda of law explaining why respondent should not be disciplined more severely than recommended by the parties. The parties filed memoranda in response to the order to show cause.

The circumstances of respondent's sexual harassment of a law student he was supervising and his attempts to pressure this law student into recanting her complaints against him are a serious breach of the standards of professional conduct required of an attorney licensed in the State of Minnesota. Nevertheless, the purpose of discipline for professional misconduct is not to punish the attorney but to protect the public and the judicial system and to deter future professional misconduct. *In re Plummer*, 725 N.W.2d 96, 98 (Minn. 2006). We have independently reviewed the file and approve the recommended disposition in part. We agree that a 90–day suspension should be imposed. However, respondent will be required to petition for reinstatement, in accordance with Rule 18(a)-(d), RLPR. A suspension coupled

with the requirement to petition for reinstatement will adequately protect the public and the judicial system and deter future professional misconduct by respondent and others.

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that respondent Clark Calvin Griffith II is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this order, with no right to petition for reinstatement for a minimum of 90 days from the date of this order. Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements, pursuant to Rule 18(e), RLPR. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs pursuant to Rule 24, RLPR.

BY THE COURT:

/s/——————————————
Alan C. Page
Associate Justice

GILDEA, C.J., took no part in the consideration or decision of this case.

WRIGHT, J., took no part in the consideration or decision of this case.

## DISSENT

LILLEHAUG, Justice (dissenting).

This matter is before us on the parties' stipulation for discipline, which asks the court to adopt the referee's recommendation that respondent Clark Calvin Griffith II be suspended from the practice of law for 90 days. Today, the court adopts the referee's recommendation, but adds the requirement that Griffith must petition for reinstatement. I fully agree with that requirement, but write separately because, in my view, Griffith's misconduct warrants a longer suspension than 90 days. As first urged by the Director of the Office of Lawyers Professional Responsibility, the suspension should be indefinite with no right to petition for reinstatement for 6 months.

I.

The Director and Griffith stipulated to the facts before the referee. A brief review of the referee's findings and conclusions is necessary to present a clear picture of Griffith's misconduct.

Griffith was an adjunct professor at William Mitchell College of Law (WMCL) who taught a class in sports law. Griffith advised students that he had helped other students get internships in the sports world. One of his students, M.D., wished to practice in sports law. She asked Griffith, and he agreed, to be her field supervisor for the next semester as part of WMCL's program of "independent clinics." They agreed to meet weekly to plan M.D.'s assignments.

Their third meeting occurred at a restaurant on the evening of January 24, 2012.[1] The referee found that, at that meeting, Griffith "engaged in verbal and physical conduct and communications of a sexual nature that were not welcomed by M.D. and heightened her feelings of discomfort with" Griffith.

Griffith's misconduct escalated when the two left the restaurant. The referee found that, while standing near M.D.'s parked

---

1. After the first two meetings, M.D. sent an email to the WMCL Dean of Students expressing "some concerns" about comments Griffith made to her.

car, Griffith "engaged in additional verbal and physical conduct and communications of a sexual nature that were not welcomed by M.D. and that subsequently resulted in his being criminally charged with indecent exposure." Specifically, based on Griffith's admission, the referee found that Griffith "unzipped his pants, exposed his penis to M.D., and then took M.D.'s hand and forced her to touch his penis."

The next day, M.D. complained to WMCL about Griffith's conduct. WMCL promptly directed Griffith not to have contact with M.D. and not to enter WMCL's campus without prior permission.

Instead, Griffith repeatedly contacted M.D. in writing by electronic means. He urged her: "Please rescind the complaint and I promise to be gentleman in all ways *as well as doing what I can to help you.*" (Emphasis added.) In a communication the same day, he told her, *"for both our sakes we* must rescind the complaint." (Emphasis added.)

M.D. reported Griffith's contact to WMCL. WMCL promptly repeated its admonition not to have contact. Griffith, however, contacted M.D. the next day. Again he referenced M.D.'s future, saying *"I was serious about a job* because I think you are a smart and decent person." (Emphasis added.)

After learning that M.D. had complained to law enforcement, Griffith contacted M.D. again, asking why she wanted to "destroy" him. M.D. told him to stop contacting her, stating unequivocally: "Stop trying to contact me in any way. I don't want to talk to you." Griffith persisted: "I am trying to figure out why you are trying to kill me as the charge will kill me. *It*

*won't do you any good either."* (Emphasis added.)

WMCL terminated its relationship with Griffith. According to Griffith's attorney, the Ramsey County Attorney's Office declined to prosecute for criminal sexual conduct. The Saint Paul City Attorney's Office charged Griffith with indecent exposure in violation of Minn.Stat. § 617.23, subd. 1(1) (2012), a misdemeanor. Griffith entered an *Alford* plea[2] and was adjudicated guilty. The State agreed to vacate the plea and dismiss the case if Griffith complied with the conditions of a 1–year supervised probation. The public record shows that the case has been dismissed.

Based on the facts stipulated and found, the referee concluded that Griffith made unwelcome comments about M.D.'s appearance, engaged in unwanted physical conduct with M.D., and continued communications with her after being instructed to have no further contact. The referee found that, as M.D.'s professor and field supervisor, Griffith "was in a position of power and authority vis-á-vis M.D." The referee also found that, in interacting with M.D., Griffith "was acting in the professional capacity of a lawyer." Griffith's misconduct "substantially interfered with the course of M.D.'s legal education at WMCL." The referee concluded that, "all while in a position of power and authority over M.D.," Griffith violated Minn. R. Prof. Conduct 8.4(b) (committed a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects), 8.4(d) (engaged in conduct that is prejudicial to the administration of justice), and 8.4(g) (harassed a person on the basis of sex in connection with professional activities).

**2.** An *Alford* plea is a guilty plea that a defendant enters as part of a plea bargain, but without actually admitting guilt. *See State v. Goulette,* 258 N.W.2d 758, 760 (Minn.1977)

(approving for use in Minnesota the procedure adopted in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

Griffith opposed any public discipline. The Director sought to have him suspended indefinitely from the practice of law for a minimum of 6 months with the requirement of a petition for reinstatement. The referee recommended a 90–day suspension without the requirement of a petition for reinstatement. Now this court has decided upon a 90–day suspension with the requirement of a petition for reinstatement. In my view, even taking into account that the reinstatement process will take some time, the suspension is too brief.

## II.

In a case such as this, where the parties have agreed that the referee's findings and conclusions are conclusive, the remaining issue is the appropriate discipline. Griffith committed two distinct courses of serious misconduct: sexual harassment followed by interference with a law school's and law enforcement's administration of justice. Griffith's courses of misconduct have a common denominator: the use and abuse of power and authority. In his dealings with M.D., Griffith was acting both as her teacher and as someone purportedly influential in the visible and competitive world of sports. Given the singular facts of this case, I have found no precisely or even closely congruent Minnesota Supreme Court precedent.

We start with a serious, even criminal, case of sexual harassment. A teacher's use of his or her position of power to sexually harass a law student is serious misconduct. As the court has previously noted in a case of sexual harassment, "a law student who wants to become eligible to practice law is a virtual captive of the law school. The law student can neither leave [by quitting immediately] and go elsewhere to school nor risk retaliation which might take the form of expulsion or failing grades." *In re Peters*, 428 N.W.2d 375, 381 (Minn.1988). In this case, Griffith's power was enhanced because he expressly invoked his ability to help students land positions in the sports world.

The harassment culminated in an act that, based on the referee's explicit findings, fits the statutory definition of criminal sexual conduct. Fifth-degree criminal sexual conduct has two elements: (1) sexual contact; (2) that is "nonconsensual." Minn.Stat. § 609.3451, subd. 1(1) (2012). In a memorandum to this court, Griffith admits sexual contact but not non-consent.[3] But the referee found, based on Griffith's admission, that after Griffith unzipped his pants and exposed himself, he "took M.D.'s hand and forced her to touch his penis." Griffith has agreed to these findings. And no plausible argument can be made that a teacher taking a student's hand and forcing genital contact was consensual.

The second course of conduct was Griffith's efforts to interfere with law school and law enforcement processes. Griffith's written threats and inducements to M.D. conveyed a message that was crystal clear.

WMCL properly directed Griffith not to contact M.D. But this conflicted with Griffith's strategy. He told M.D.: "*We* will get over this if *we keep it contained.*" (Emphasis added.) Griffith tried to "contain" the problem by reminding M.D. of his position of power and authority, includ-

---

**3.** In an affidavit to this court, Griffith's attorney states: "Had criminal sexual conduct charges been filed, Mr. Griffith would have insisted upon a jury trial, and would have advanced the defense of consent." There is, however, no requirement that a lawyer be charged with or convicted of a specific of- fense in order for this court to discipline a lawyer for committing illegal actions. *See In re Johnson*, 414 N.W.2d 199, 202 (Minn.1987) ("Even though [the attorney] has not been criminally charged for violation of that statute, we may still impose discipline for illegal actions in violation thereof.").

ing that he was "serious about a job" for her. So, he ignored WMCL's admonitions.

Griffith's strategy of containment continued after the matter was referred to law enforcement. Griffith ignored the unequivocal instruction of M.D., the criminal complainant, to cease contact. Referring to a potential criminal charge, he advised her: "It won't do you any good either." Griffith's combination of threats and inducements was misconduct seriously prejudicial to the administration of justice.

Besides the two courses of serious misconduct, I am greatly concerned that there is nothing in the record showing remorse. As the referee noted: "The stipulation of fact and the entire record does not allow a finding on remorse one way or the other." While Griffith's electronic communications to M.D. express his sorrow and shame, one cannot tell if his apology was genuine or was merely part of his strategy to "keep it contained."

I certainly understand that this court gives great weight to a referee's recommendation for discipline. *See, e.g., In re Selmer,* 529 N.W.2d 684, 687 (Minn.1995). I also recognize that the Director and Griffith agreed not to challenge the referee's recommendation. However, we have noted that "[i]t is not unusual for this court to substitute its judgment for [the] referee['s] recommendations." *In re Boyd,* 430 N.W.2d 663, 664 (Minn.1988) (rejecting the parties' stipulation that the court impose the discipline recommended by the referee and imposing a longer suspension). Especially when the referee's recommendation is based on stipulated facts, we should not hesitate to exercise our "final responsibility for determining the appropriate discipline." *In re Wentzel,* 711 N.W.2d 516, 520 (Minn.2006).

As always in attorney discipline cases, we act not to punish the wrongdoer but to protect the public, deter future miscon-

duct, and restore public confidence in the legal system. *In re Crandall,* 699 N.W.2d 769, 771 (Minn.2005). In determining the appropriate discipline to impose, we consider the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession. *In re Jones,* 834 N.W.2d 671, 681 (Minn.2013). A 90–day suspension does not sufficiently reflect the seriousness of the attorney's misconduct and the harm it has caused to the legal profession and the public. Based on the specific facts of this case, a longer suspension would better protect the public, deter future misconduct, and restore public confidence.