**In re Petition for DISCIPLINARY ACTION AGAINST Randall D. B. TIGUE, a Minnesota Attorney, Registration No. 110000.**

No. A13–0519.

Supreme Court of Minnesota.

March 12, 2014.

Martin A. Cole, Director, Julie E. Bennett, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Randall D. B. Tigue, Golden Valley, Minnesota, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Randall D. B. Tigue. Following an evidentiary hearing, the referee found that Tigue failed to maintain trust account books and records, failed to retain trust account bank records for the required period of time, and negligently misappropriated client funds. The referee recommended a public reprimand and 3 years of supervised probation. The Director challenges the referee's recommended discipline, arguing that Tigue should be indefinitely suspended for a minimum of 90 days and required to petition for reinstatement. We conclude that Tigue's trust account violations warrant a 30–day suspension.

### I.

Tigue was admitted to practice law in Minnesota in October 1973. In October 2007, Tigue was publicly reprimanded and placed on 2 years of probation for failing to properly maintain his trust account books and records in connection with a 2005 overdraft. *In re Tigue*, No. A07–1936, Order at 2 (Minn. filed Oct. 26, 2007). He was also required to make his trust account books and records available to the Director during the probation. *Id.* Tigue's probation ended in October 2009.

The Director filed the instant petition for disciplinary action against Tigue for similar trust account violations. The

petition alleged that between May 2010 and June 2012, Tigue again failed to properly maintain his trust account, leading to a shortage and causing the trust account to become overdrawn. Tigue timely answered the petition, and we appointed a referee.

Following an evidentiary hearing, the referee issued findings of fact, conclusions of law, and a recommendation for discipline. The referee made the following findings and conclusions.

In January 2012, Tigue's trust account became overdrawn, and the bank reported the overdraft to the Director. The Director initiated an overdraft inquiry and discovered that the overdraft resulted from Tigue's failure to maintain and reconcile his trust account. The overdraft inquiry was converted into a formal disciplinary investigation. After obtaining copies of some records from his bank because he had not retained them, Tigue submitted complete trust account books and records dating back to October 2009.

The Director audited those records and discovered that Tigue's trust account balance was "continuously short of [the] amount necessary to cover aggregate client balances" from May 5, 2010, to June 14, 2012. The shortages ranged from $0.30 to $481.80. In each instance, the shortage was caused by Tigue issuing a check to himself in an amount exceeding the funds available for disbursement. In February 2012, Tigue began making deposits into his trust account to cover the shortages. However, it took him until June 2012 to eliminate the overall shortage. Tigue admitted that in October 2009 he let maintenance of his trust account books and records "slide" because he was no longer on probation and no longer had an obligation to submit his trust account records to the Director.

The referee concluded that, between October 2009 and June 2012, Tigue failed to maintain and retain the required trust account books and records, in violation of Minn. R. Prof. Conduct 1.15(c)(3) and (h) and Appendix 1 thereto.[1] The referee also found that Tigue negligently misappropriated client funds, in violation of Minn. R. Prof. Conduct 1.15 and Appendix 1 thereto, and 8.4(d).[2] The Director and Tigue agree with the referee's determination that Tigue violated the above-mentioned rules.

The referee identified four factors that aggravated Tigue's professional misconduct, specifically that Tigue: (1) has a disciplinary history, having been disciplined for similar misconduct in 2007; (2) engaged in misconduct similar to past misconduct "almost immediately" after completing probation in 2009; (3) overdrew his trust account in January 2012 and failed to remedy the shortage for over 5 months; and (4) had been practicing law for nearly 40 years at that time.

The referee found three mitigating factors, concluding that Tigue: (1) admitted

---

1. Rule 1.15(c)(3) requires a lawyer to "maintain complete records of all funds, securities, and other properties of a client or third person coming into the possession of the lawyer and render appropriate accounts to the client or third person regarding them."

  Rule 1.15(h) states, in part, that "[e]very lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law." A lawyer is required to "preserve[]" these books and records for at least 6 years. *Id.*

  Appendix 1 to Rule 1.15 relates to the maintenance of trust account books and records.

2. Rule 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

his misconduct; (2) submitted monthly trust account records to the Director between June 2012 and June 2013 showing his compliance with applicable rules; and (3) did not cause monetary loss to any of his clients, evidenced by the fact that Tigue's clients were unaware of any trust account irregularities.

The referee recommended that Tigue be publicly reprimanded and placed on supervised probation for 3 years. The referee also recommended that the terms of Tigue's probation require him to: (1) maintain trust account books and records in compliance with the rules, and that these be made available to the Director; (2) hire a certified public accountant (CPA) to directly supervise Tigue's maintenance of his trust account books and records; (3) provide the Director with monthly certifications, signed by the CPA, that all trust account books and records are being maintained and that Tigue's trust account has not been overdrawn; and (4) fully cooperate with the Director's monitoring of Tigue's probation.

The Director challenges the referee's consideration of aggravating factors and argues that Tigue should be suspended for 90 days and be required to petition for reinstatement. Tigue urges the court to impose the recommended discipline, although he argues that modifications should be made to the recommended terms of probation.

## II.

The Director ordered a transcript of the disciplinary hearing; therefore, the referee's findings of fact and conclusions of law are not conclusive, and we are not bound by them. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn.2011). When a party orders a transcript, we apply a clearly erroneous standard and will only reverse the referee's findings and conclusions if they are unsupported by the record. *In re Jones*, 834 N.W.2d 671, 677 (Minn.2013). Although not binding, the "referee's recommendation for discipline carries great weight"; however, we have "the ultimate responsibility for determining what discipline, if any, is appropriate." *In re Selmer*, 749 N.W.2d 30, 36 (Minn. 2008) (citation omitted) (internal quotation marks omitted).

Because neither party challenges any of the referee's findings or conclusions with respect to Tigue's acts of misconduct, the only issue before us is the appropriate discipline to impose. The purpose of disciplinary sanctions for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn.2010). Four factors guide our imposition of discipline: (1) the nature of the misconduct; (2) the cumulative weight of the violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn.2012). We look to similar cases for guidance as to the appropriate discipline, but tailor the sanction to the specific facts of each case after considering aggravating and mitigating circumstances. *Id.*

The Director claims that the referee's recommended discipline of a public reprimand and 3 years of probation is insufficient and argues that Tigue should be suspended indefinitely for a minimum of 90 days. The Director argues that this harsher sanction is warranted because the referee erred in failing to consider Tigue's lack of remorse as an aggravating factor. According to the Director, Tigue has not apologized and has made excuses for his

actions. The Director also asserts that Tigue's trust account violations harmed his clients and harmed the legal profession by eroding public confidence in it.

Tigue contends that the court should impose the referee's recommended discipline because his misconduct did not harm his clients in any way and his history of discipline is overcome by his conduct during the proceedings—including his cooperation with the Director's investigation, the steps he took to remedy his misconduct, and the fact that he did not try to conceal his violations. Further, Tigue argues that he has shown remorse and accepted responsibility for his actions as indicated by his correspondence with the Director and his testimony at the disciplinary hearing. Although Tigue agrees with the referee's primary recommendation of a public reprimand and 3 years of probation, Tigue asks the court to make two "minor modifications" to the terms of his probation. First, Tigue asks that he receive reporting credit for the period during which he voluntarily submitted records to the Director. Second, he argues that, because he voluntarily submitted monthly trust account records to the Director and maintained his trust account books and records while doing so, he should not have to hire a CPA.

██ Although there is no indication in the record that Tigue's misconduct resulted from any intention to deceive his clients, his misconduct is nonetheless serious. This court considers "unintentional misappropriation" of client funds and the failure to maintain the required trust account books and records a serious violation of the rules. *See, e.g., In re Jellinger,* 625 N.W.2d 143, 147 (Minn.2001); *In re Porter,* 449 N.W.2d 713, 719 (Minn.1990). Furthermore, Tigue has been disciplined for trust account violations before, and he intentionally stopped maintaining his trust account books and records shortly after his previous probation period ended because he was not required to submit reports to the Director. "[M]ultiple acts of misconduct, including past disciplinary history, warrant a more severe sanction." *Ulanowski,* 800 N.W.2d at 801. Attorneys with a disciplinary history are "expected to show a renewed commitment to ethical behavior." *In re Coleman,* 793 N.W.2d 296, 308 (Minn.2011) (citation omitted) (internal quotation marks omitted). "[W]e generally impose more severe sanctions when the current misconduct is similar to the misconduct for which an attorney has already been disciplined." *Lundeen,* 811 N.W.2d at 609.

Tigue's ongoing failure to properly maintain his trust account led to a shortage in his trust account that continued for over 2 years. Moreover, after Tigue was notified of the overdraft, it took him 5 months to eliminate the shortage in his trust account. Misappropriation "of any kind" harms the public and the legal profession. *In re Fairbairn,* 802 N.W.2d 734, 743 (Minn.2011) (stating that misappropriation "harms the legal profession because an attorney's misuse of funds 'entrusted to [the] attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers.'" (quoting *In re Rooney,* 709 N.W.2d 263, 270 (Minn. 2006))). Nevertheless, Tigue remedied the shortages in his trust account before any client loss was incurred.

██ The referee made no findings regarding Tigue's remorse. The Director argues that the referee's failure to address remorse in his findings was clearly erroneous, citing *In re Albrecht,* 779 N.W.2d 530, 538 (Minn.2010), and *In re Farley,* 771 N.W.2d 857, 862 (Minn.2009). It is true that we view remorse as "an important issue in an attorney discipline case." *Fairbairn,* 802 N.W.2d at 745 (citation

omitted) (internal quotation marks omitted). However, a referee's failure to make a factual finding regarding remorse is clear error only when the respondent's remorse or lack thereof is raised as an issue in the proceedings before the referee.[3] There are no indications in the record here that either party raised the issue of remorse at the evidentiary hearing. Therefore, the referee's failure to address remorse was not clear error.

■■■■ In determining the discipline to impose, we consider similar cases to "ensure that our disciplinary decision is consistent with prior sanctions." *In re Nathanson*, 812 N.W.2d 70, 80 (Minn.2012). The Director cites several cases to support his position that a suspension is warranted: *In re Johnson*, 712 N.W.2d 178 (Minn. 2006); *In re Brooks*, 696 N.W.2d 84 (Minn. 2005); *In re Basiago*, 660 N.W.2d 124 (Minn.2003); *In re Hoedeman*, 620 N.W.2d 714 (Minn.2001); and *In re Getty*, 452 N.W.2d 694 (Minn.1990). Tigue focuses on a different set of cases: *In re Griffith*, 838 N.W.2d 792 (Minn.2013); *In re Q.F.C.*, 728 N.W.2d 72 (Minn.2007); *In re Reiter*, 567 N.W.2d 699 (Minn.1997); *In re Weems*, 521 N.W.2d 856 (Minn.1994); *In re Milloy*, 484 N.W.2d 251 (Minn.1992); and *In re Fling*, 316 N.W.2d 556 (Minn.1982).

The discipline imposed in the cases cited by both sides ranged from private probation to a 2–year minimum indefinite suspension. Several of these cases involve other acts of attorney misconduct, in addition to trust account violations. And some cases, unlike the instant case, involve attorneys with no disciplinary history.

Of the cases identified by the parties, *Reiter* and *Johnson* appear most similar to the facts of this case. Reiter had a disciplinary history, including violations involv-

ing trust account mismanagement. *Reiter*, 567 N.W.2d at 700 n. 1. Reiter subsequently engaged in additional misconduct, including mismanaging his trust account by issuing checks on behalf of clients before deposits had been made to that account to cover those checks and failing to maintain monthly reconciliations of his trust account books and records for 4 months. *Id.* at 702–04. Reiter was publicly reprimanded and given 2 years of supervised probation, despite the fact that he had previously been given the same sanction for similar misconduct. *Id.* at 705–06. Tigue argues that under *Reiter*, he should again be given probation and a public reprimand. We disagree.

■■■■ As compared to Reiter, Tigue's trust account violations are more substantial and occurred over a much longer period of time. Further, unlike Reiter, Tigue deliberately chose to stop complying with his trust account obligations because his probation had ended and he committed new violations almost immediately thereafter. In light of these facts, we do not believe that a public reprimand and probation are sufficient to protect the public and deter Tigue and other attorneys from committing similar future acts of misconduct.

In *Johnson*, the petition for disciplinary action alleged that the respondent attorney had negligently misappropriated client funds and had failed to maintain proper trust account books and records. 712 N.W.2d at 178. After an evidentiary hearing, the Director and the attorney entered into a stipulation recommending that the attorney receive a public reprimand, a stayed 60–day suspension, and 2 years of probation. *Id.* We approved the stipulation and imposed the stipulated discipline. *Id.* at 178–79. For the same reasons that

---

**3.** Even if neither party raises the respondent's remorse or lack thereof as an issue before the referee, the referee may still make factual findings on the issue of remorse.

the disciplinary sanction imposed in *Reiter* are insufficient to protect the public and deter future misconduct, the sanction imposed in *Johnson* is also insufficient.

We conclude that a 30–day suspension with conditions is warranted.

Accordingly, we order that:

1. Respondent Randall D. B. Tigue is suspended from the practice of law, effective 14 days from the date of the filing of this opinion, for a minimum of 30 days;

2. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals);

3. Respondent shall pay $900 in costs pursuant to Rule 24, RLPR;

4. Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court;

5. Upon reinstatement to the practice of law, respondent shall be subject to probation supervised by the Director's Office for a period of 2 years, subject to the following conditions:

(a) Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Respondent shall promptly respond to the Director's correspondence by the due date. Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, respondent shall authorize the release of information and documentation to verify compliance with the terms of this probation;

(b) Respondent shall abide by the Minnesota Rules of Professional Conduct;

(c) Respondent shall maintain law office and trust account books and records in compliance with Minn. R. Prof. Conduct 1.15 and Appendix 1. These books and records include the following: client subsidiary ledgers; checkbook register; monthly trial balances; monthly trust account reconciliation; bank statements; canceled checks; duplicate deposit slips; and bank reports of interest, service charges, and interest payments to the Minnesota IOLTA Program. Such books and records shall be made available to the Director within 30 days from the date of the filing of this opinion and thereafter at such intervals as the Director deems necessary to determine compliance;

(d) Respondent shall hire a certified public accountant (CPA) who will directly supervise the maintenance of his trust account books and records; and

(e) Respondent shall provide the Director with monthly certifications, signed by the CPA, that all trust account books and records are being maintained and that respondent's trust account has not been overdrawn; and

6. Within 1 year of the date of filing of this opinion, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation

shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.

So ordered.