**In re Petition for DISCIPLINARY ACTION AGAINST Richard W. COPELAND an Attorney at Law of the State of Minnesota.**

No. C6–92–252.

Supreme Court of Minnesota.

Sept. 17, 1993.

Marcia A. Johnson, Patrick R. Burns, St. Paul, for appellant.

Theodore J. Collins, St. Paul, for respondent.

**OPINION**

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility brought a petition containing several counts of professional misconduct against respondent. The Director alleges that respondent misappropriated client funds, commingled personal and client funds, failed to maintain proper books and records, falsely certified to this court that he did keep proper books and records, represented a client even though he was aware of a conflict of interest in that representation, neglected a client matter, and knowingly con-

tacted a represented party without the consent of that party's attorney. These charges against respondent arise out of three client matters and from the general mishandling of respondent's client trust account. On November 16, 17, and 18, 1992, a hearing was held before the Honorable Michael A. Young, Scott County District Court Judge, who served as referee. The referee found that respondent knowingly violated rules of professional responsibility, but, in mitigation, found that respondent did not act with the intent to harm his clients. On December 3, 1992, Referee Young recommended that respondent be placed on five years of supervised probation.

The Director filed a certificate as to transcript, pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), and therefore the referee's findings and conclusions are not conclusive. The Director specifically disputes that portion of Finding No. 83 which states: "Respondent's actions were not the result of any dishonest motive or intent to deprive clients of their funds. His actions were more the result of carelessness and mismanagement."[1] In addition, the Director argues that the referee's conclusions of law are incomplete and inconsistent with our holdings in prior disciplinary matters.

### A. *Landreville Matter*

Respondent represented Gary Landreville in a marriage dissolution. The referee found that during the course of the representation respondent violated Rules 1.3 and 3.2, Minnesota Rules of Professional Conduct (MRPC), by failing to timely respond to and communicate with opposing counsel in a discovery dispute, resulting in the jailing of his client. The referee also found that respondent had violated Rule 4.2, MRPC, by contacting Mrs. Landreville, a party whom he knew to be represented, without the consent of Mrs. Landreville's attorney. In mitigation the referee found that while respondent had been dilatory in dealing with the discovery dispute, there was little respondent could

have done that he did not do. He also found that respondent's violation of Rule 4.2, MRPC, should not result in discipline, because the respondent was a long-time friend of Mrs. Landreville, and respondent had been contacted directly by Mrs. Landreville at various times during the dissolution proceedings for the purpose of obtaining separation payments that had not arrived on time. The referee concluded that the Director did not establish by clear and convincing evidence that respondent violated Rules 1.1 and 8.4(d), MRPC, with respect to the Landreville matter.

### B. *Ringold Matter*

Respondent had represented Mr. and Mrs. Ringold on various matters for more than six years when, in December 1987, Mr. Ringold requested that respondent prepare a bankruptcy filing for them. As of March 1987, the Ringolds owed respondent $5,267.50 for legal services rendered. Because he was a creditor of the Ringolds, respondent suggested that they seek independent counsel, but Mr. Ringold insisted that he wanted respondent to handle the bankruptcy. When the bankruptcy was filed, respondent was not included among the list of creditors.

The referee found that respondent informed Mr. Ringold that he would have a conflict of interest by handling the bankruptcy while remaining a creditor. The referee further found that Mr. Ringold agreed that respondent should delete his name from the list of creditors in his bankruptcy filing. The referee also found, however, that respondent failed to disclose his conflict of interest to Mrs. Ringold, a violation of Rule 1.7(b)(2), MRPC, and that she never gave her permission for respondent to delete his name from the list of creditors. The referee concluded that the Director did not establish by clear and convincing evidence that respondent had violated Rules 1.4, 1.5, 3.1 and 8.4(c), MRPC, with respect to the Ringolds or that he violated Rule 1.7, MRPC, with respect to Mr.

---

1. In its entirety Finding No. 83 reads:
   Respondent's actions were not the result of any dishonest motive or intent to deprive clients of their funds. His actions were more the result of carelessness and mismanagement. They are

not, however, excusable, since he and all other lawyers in this state have known for decades that such commingling and mismanagement are grounds for discipline.

Ringold. In mitigation, the referee found that the vast majority of respondent's dealings with the Ringolds were with Mr. Ringold, and that respondent had not sought collection, nor does he intend to seek collection, of pre-bankruptcy fees from Mrs. Ringold.

## C. *Knopik Matter*

Respondent represented Mr. Knopik and his business, Fuel Recovery Company (FRC), on several matters over many years. Respondent and Mr. Knopik agreed that Mr. Knopik would pay respondent on an hourly rate, but because Mr. Knopik was unable to pay the monthly bills respondent sent to him, respondent stopped sending the bills.

In 1989, respondent recovered a judgment of approximately $71,000 for FRC. At that time, Mr. Knopik owed respondent for unbilled legal fees in the amount of approximately $13,000. Legal fees for this recovery were approximately $15,000. When the $71,000 payment arrived in respondent's office, he signed Mr. Knopik's name on the check and took one-third of the proceeds as payment for all of the attorney's fees owed.

The referee found that Mr. Knopik did not ask respondent to submit bills, and that Mr. Knopik had authorized respondent's signing Mr. Knopik's name to the check and taking one-third of the recovery as a final settlement of all legal fees owed to respondent by Mr. Knopik. The referee noted that one-third of the $71,000 recovery was less than respondent would have received had he required Mr. Knopik to pay the pre-existing balance plus the hourly fees incurred from the recovery. The referee concluded that the Director did not establish by clear and convincing evidence that respondent violated Rules 1.4, 1.5(a) or (b) and 8.4, MRPC, with respect to the Knopik matter.

## D. *Misappropriation*

Respondent's alleged misappropriations fall into three categories: (1) improperly maintaining trust account books and records; (2) taking money from the client trust account for personal use; and (3) certifying to this court that he maintained proper books and records.

The referee found, and respondent admits, that checks were drawn on the trust account to pay for personal items such as health club and yacht club dues, and to buy a car and a boat. He further found, however, that no client lost money as a result of these acts, and in each case the money was restored to the account before the Professional Responsibility Board began its investigation.

The referee concluded that respondent did not intentionally misappropriate client funds, but rather his actions were "the result of carelessness and mismanagement." The referee concluded that this "carelessness and mismanagement" violated Rules 1.15(a), (b), (g), and (h), MRPC. With regard to misappropriation, the referee did not find a violation of Rule 8.4(c), MRPC. The Director argues that respondent's acknowledged improper maintenance of the trust accounts in conjunction with his acknowledged use of trust account funds for the purchase of personal items shows that respondent intentionally misappropriated client funds.

We uphold the referee's factual findings in attorney discipline cases if they are not clearly erroneous. *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988). Stated another way, the referee's findings will be upheld if they are supported by the evidence. *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). In this case, the referee's factual findings are supported by the evidence. Establishing that the referee's factual findings are supported by the evidence, however, does not end our inquiry. We must still determine the appropriate discipline. The referee's recommendations are entitled to great weight, but the final responsibility for determining sanctions rests with this court. *Pyles*, 421 N.W.2d at 325.

As a licensed attorney, respondent is charged with the knowledge that he must maintain client funds in a separate trust account and that those funds are not for his personal use. *See In re Porter*, 449 N.W.2d 713, 718 (Minn.1990). In *In re Isaacs*, 451 N.W.2d 209 (Minn.1990), we stated that "[m]isappropriation occurs whenever funds belonging to a client are not kept in trust and

are used for any purpose other than that specified by the client." *Id.* at 211. This is so even where the attorney did not intend to embezzle the funds. There can be no question in this case that respondent knowingly misappropriated client funds.

The Director recommends that respondent's license to practice law be suspended indefinitely and that at a minimum he not be permitted to reapply for a period of three years. Respondent, on the other hand, argues that five years of supervised probation, as recommended by the referee, is the appropriate discipline. He cites several cases in which attorneys who committed individual acts similar to his were placed on probation. *See In re Hendrickson,* 464 N.W.2d 722 (Minn.1991) (public reprimand and probation for attorney who obtained loans from clients he had previously represented without disclosing conflicting interests or recommending that they seek independent counsel); *In re Dowdal,* 284 N.W.2d 394 (Minn.1979) (public reprimand for attorney who, in an isolated incident, signed his client's name to a document with the permission of the client); *In re Reiter,* 472 N.W.2d 316 (Minn.1991) (public reprimand and probation for attorney who misused client trust account). The cases cited by respondent are not helpful in shedding light on the appropriate discipline. In each of the cited cases discipline resulted from a single transaction with a single client. In the case of respondent, there were multiple trust account violations as well as the violations which took place in the Landreville and Ringold matters. Therefore, more serious discipline is appropriate.

We hold that the appropriate sanction for respondent's conduct is a 90–day suspension. Respondent shall comply in all respects with Rule 26, RLPR. At the completion of the suspension, respondent may be readmitted to practice law pursuant to Rule 18, RLPR, provided:

(1) That he employs a public accountant to maintain separate business and client trust accounts;

(2) That his client trust account is supervised by a licensed attorney for a period of one year;

(3) That he fully comply with the supervisor's efforts to monitor compliance;

(4) That all books and records concerning law office income and expenses and funds held on behalf of clients be in compliance with Rule 1.15, MRPC;

(5) That he fully cooperate with the Director's office to monitor his compliance;

(6) That he take and successfully pass the professional responsibility portion of the Minnesota Bar Exam; and

(7) That he pay to the Director the sum of $750 in costs and disbursements.

Ninety-day suspension ordered with conditions for reinstatement.