STATE OF MINNESOTA

IN SUPREME COURT

A14-1311

Original Jurisdiction                                                     Per Curiam

In re Petition for Disciplinary Action
against Frank Arend Schulte, a Minnesota          Filed:  September 16, 2015
Attorney, Registration No. 244934                        Office of Appellate Courts

_____

Martin A. Cole, Director, Siama Y. Chaudhary, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Frank Arend Schulte, Saint Paul, Minnesota, pro se.

_____

S Y L L A B U S

An indefinite suspension from the practice of law with no right to petition for

reinstatement for a minimum of 4 months is the appropriate discipline for an attorney

who failed to keep required trust account books and records, paid for non-client-related

expenses from his trust account, failed to cooperate with the disciplinary investigation,

and when several aggravating factors are present.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition

for disciplinary action against respondent Frank Arend Schulte, alleging that Schulte paid

for non-client-related expenses from his trust account, failed to properly maintain trust

1

account books and records, and failed to cooperate with the Director's investigation. We deemed the allegations in the petition admitted after Schulte did not respond to the petition. *See* Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR). The only issue before us, therefore, is the appropriate discipline to impose. We conclude that Schulte's misconduct warrants an indefinite suspension from the practice of law with no right to petition for reinstatement for a minimum of 4 months.

I.

Schulte was admitted to the practice of law in Minnesota in 1994. In 2005 he was placed on private probation for yelling at a client in a courthouse building, disclosing confidential client information, failing to return client property, and failing to cooperate with a disciplinary investigation. In 2010 he received an admonition for failing to diligently pursue a client's case, properly serve an opposing party, communicate with a client, and timely provide a client's file to new counsel. One month later, he received a separate admonition for failing to communicate with a client, safely hold client property, and attend court.

The instant disciplinary petition alleged that Schulte failed to properly maintain his trust account books and records, paid personal expenses out of his trust account, and subsequently did not cooperate with the Director's inquiry into his misconduct, in violation of Minn. R. Prof. Conduct 1.15(a), 1.15(b), 1.15(c)(3), and 1.15(h), as interpreted by Appendix 1 thereto, and Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR. Because Schulte did not answer the disciplinary petition, we deemed the

allegations admitted. *In re De Rycke*, 707 N.W.2d 370, 372 (Minn. 2006); Rule 13(b), RLPR. We summarize the admitted allegations below.

*Trust Account*

Schulte overdrew his trust account in September 2013, and the bank reported the overdraft to the Director. After an investigation, the Director determined that between September 2012 and March 2014, Schulte failed to keep the required trust account books and records, including a check register, client subsidiary ledgers, monthly trial balances, and monthly trust account reconciliations. Additionally, the Director determined that between at least August 2013 and January 2014, Schulte improperly paid a monthly Internet bill that was a personal or business expense out of his trust account. Because Schulte never provided copies of his complete trust account books and records during the investigation, the Director was unable to ascertain either the ownership of the funds that Schulte withdrew from his trust account to pay this Internet bill, or whether Schulte paid other non-client-related expenses out of his trust account. Thus, the Director was unable to determine whether Schulte misappropriated client funds by paying his personal Internet bill with client funds in his trust account.[1] At the very least, however, Schulte failed to withdraw attorney fees from his trust account if he had already earned them.

Schulte's conduct with respect to his trust account violated Minn. R. Prof. Conduct 1.15(a) (generally prohibiting a lawyer from keeping funds belonging to the

---

[1]     *See In re Fairbairn*, 802 N.W.2d 734, 742 (Minn. 2011) (stating that misappropriation of client funds occurs when client "funds are not kept in trust and are used for a purpose other than one specified by the client").

3

lawyer in a trust account), 1.15(b) (requiring a lawyer to withdraw earned fees from the trust account within a reasonable time after the fees have been earned), 1.15(c)(3) (requiring a lawyer to "maintain complete records of all funds . . . coming into the possession of the lawyer"), and 1.15(h), as interpreted by Appendix 1 thereto (requiring a lawyer to maintain trust account books and records).

### *Failure to Cooperate*

When the bank reported the overdraft in Schulte's trust account, the Director initiated an overdraft inquiry and requested that Schulte provide a written explanation for the overdraft with supporting documentation. Schulte did not respond within the requested timeframe, and the Director sent a second letter requesting a written response. Schulte then provided a copy of the check that caused the overdraft and some bank statements. Because the information that Schulte provided was incomplete, the Director twice more requested additional information, but Schulte did not respond to these requests.

The Director subsequently converted the overdraft inquiry into a formal disciplinary investigation and sent Schulte a notice of investigation regarding the trust account overdraft. Schulte did not respond to the notice of investigation or, again, to multiple follow-up requests. He also did not attend a meeting at the Director's office.

Schulte eventually called the Director and admitted that he had not kept the required trust account books and records, but he agreed to provide the documentation he did have. Schulte submitted a reconstructed and unannotated checkbook register and bank statements for the period from August 1, 2013, through January 31, 2014. Shortly

4

thereafter, Schulte met with the Director and again stated that he had not been keeping all of the required trust account books and records. Although Schulte agreed to reconstruct his trust account books and records within 30 days, he never did so, even after receiving several follow-up letters from the Director. Lastly, Schulte failed to provide a written response to the disciplinary charges presented to the panel of the Lawyers Professional Responsibility Board.

Schulte's noncooperation in the investigation violated Minn. R. Prof. Conduct 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information in a disciplinary matter) and Rule 25, RLPR (requiring lawyers to cooperate with disciplinary investigations).

## II.

Because we have deemed the allegations in the petition admitted, *see* Rule 13(b), RLPR, the sole question before us is the appropriate discipline for Schulte's professional misconduct. *See In re Swensen*, 743 N.W.2d 243, 247 (Minn. 2007). The Director contends that Schulte should receive an indefinite suspension from the practice of law for a minimum of 6 months; Schulte contends a 3-month suspension is appropriate.

The purpose of disciplinary sanctions is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). The four factors that guide our imposition of discipline are: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d

5

458, 463 (Minn. 2007). Aggravating and mitigating circumstances are also considered. *In re Harrigan*, 841 N.W.2d 624, 629 (Minn. 2014). While we look to similar cases for guidance on the appropriate discipline, we tailor the discipline to the specific facts of each case. *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012).

The nature of Schulte's misconduct is serious. Schulte mishandled his trust account by failing to properly maintain trust account books and records, keeping funds he earned in his trust account, and using his trust account to pay a monthly Internet bill. "The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety." *In re Beal*, 374 N.W.2d 715, 716 (Minn. 1985). We have suspended attorneys for trust account violations even when there was no evidence they intended to deceive their clients or that their trust account violations harmed any clients. *See, e.g.*, *In re Tigue*, 843 N.W.2d 583, 587 (Minn. 2014) (suspending attorney for trust account violations and stating that attorney's unintentional misappropriation of client funds and failure to maintain trust account books and records was "serious" misconduct); *In re Hoedeman*, 620 N.W.2d 714, 717 (Minn. 2001) (indefinitely suspending attorney, in part, for failing to maintain trust account books and records and stating that "[w]e take trust account violations seriously and will not hesitate to impose a disciplinary suspension to protect the public from attorneys who either intentionally or unintentionally fail to exercise care in handling client funds" (citation omitted)); *In re Ganley*, 549 N.W.2d 368, 370-71 (Minn. 1996) (suspending an attorney, in part, for trust account violations and

6

stating that "every lawyer is . . . charged with the knowledge that he must maintain a separate [trust] account and adequate records" (citation omitted)).

Schulte's failure to cooperate with the disciplinary investigation is also serious misconduct. We have "long recognized that it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints against him." *In re Cartwright*, 282 N.W.2d 548, 551 (Minn. 1979). "[N]oncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *Nelson*, 733 N.W.2d at 464. Here, Schulte's failure to cooperate was substantial. He failed to respond to the Director's original inquiry, the notice of investigation, and many subsequent requests for information. He did not attend a meeting during the investigation and did not answer the disciplinary charges. The cooperation that Schulte did provide was minimal, as he only attended one meeting with the Director and eventually provided some documents related to his trust account.

We next consider the cumulative weight of Schulte's disciplinary violations. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). We have distinguished "a brief lapse in judgment or a single, isolated incident" of misconduct from "multiple instances of mis[conduct] occurring over a substantial amount of time." *In re Fairbairn*, 802 NW.2d 734, 743 (Minn. 2011) (citation omitted). Schulte's failure to maintain proper trust account books and records spanned from at least September 2012

to March 2014. In addition, his failure to cooperate with the investigation constituted repeated misconduct over the course of many months. The record therefore establishes that Schulte's conduct did not constitute a single, isolated incident of misconduct.

We also consider the harm to the public and the legal profession. As far as we know, Schulte's actions did not appear to harm clients. The lack of evidence of client harm, however, is partly due to Schulte's failure to cooperate, which prevented the Director from determining if Schulte used client funds held in his trust account to pay personal expenses. As a result, Schulte's failure to cooperate is particularly harmful because it prevented the Director from determining whether client funds were at risk from Schulte's misuse of his trust account. In addition, Schulte's "failure to cooperate with the disciplinary investigation . . . harmed the legal profession by undermining the integrity of the attorney discipline system." *In re Ulanowski*, 834 N.W.2d 697, 703 (Minn. 2013). Likewise, his misuse of his trust account harmed the legal profession because it called into question the ability of attorneys to safeguard their clients' money. *See In re Hartke*, 529 N.W.2d 678, 680 (Minn. 1995) ("The maintenance of proper trust account records is one of the fundamental responsibilities of a practicing attorney because it is the only method for maintaining the identity of the client's money.").

We also consider aggravating and mitigating circumstances when determining the appropriate discipline for attorney misconduct. *In re Haugen*, 543 N.W.2d 372, 375 (Minn. 1996). Schulte's disciplinary history, which consists of three prior admonitions, is an aggravating factor. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (explaining that an attorney's prior disciplinary history is an aggravating factor "because, after being

disciplined, an attorney is expected to show a renewed commitment to ethical behavior" (citation omitted)). Moreover, the fact that Schulte has been previously disciplined for failing to cooperate with the Director is another aggravating factor. *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005) ("We generally impose more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined."). Schulte has been licensed to practice law for more than 20 years, and his substantial experience practicing law is also an aggravating factor. *Rebeau*, 787 N.W.2d at 176.

Schulte urges us to consider his remorse and depression as mitigating factors. Because he failed to answer the disciplinary petition, there are no factual findings in the record regarding any potential mitigation. *In re Ladd*, 463 N.W.2d 281, 283 (Minn. 1990) (stating that we are "not an original factfinding body in attorney discipline matters" and an attorney's "failure to answer the petition with any mitigating circumstances bars our consideration of such issues"). Thus, we will not consider any mitigating factors in imposing discipline.

Finally, we look to similar cases for guidance. We have suspended attorneys and required them to petition for reinstatement when they committed trust account violations and failed to cooperate with the Director. *In re Hansen*, ___ N.W.2d ___, 2015 WL 4637375, at *1 (Minn. Aug. 5, 2015) (indefinitely suspending attorney for a minimum of 90 days and requiring him to petition for reinstatement for improperly communicating with an unrepresented person, failing to maintain trust account books and records and overdrawing his trust account, and failing to cooperate with a disciplinary investigation);

9

*In re Schutz*, 846 N.W.2d 82, 82 (Minn. 2014) (order) (indefinitely suspending attorney for a minimum of 90 days and requiring him to petition for reinstatement for failing to maintain trust account books and records, failing to cooperate with a disciplinary investigation, and failing to comply with the referee's orders during the disciplinary proceeding); *In re Edinger*, 700 N.W.2d 462, 464 (Minn. 2005) (indefinitely suspending attorney with no right to petition for reinstatement for 3 months for failing to cooperate with a disciplinary investigation, making false statements during a disciplinary investigation, paying personal expenses out of a trust account, and failing to maintain trust account books and records); *see also In re Flatten*, 611 N.W.2d 340, 341, 343 (Minn. 2000) (indefinitely suspending attorney and requiring him to petition for reinstatement for failing to cooperate with disciplinary investigation of a trust account overdraft when the attorney had been previously disciplined for failure to cooperate).

In *Hansen*, *Schutz*, and *Edinger*, we allowed the attorneys to petition for reinstatement after 90 days. Those cases, however, are distinguishable from the instant case because the attorneys had less substantial disciplinary histories than Schulte, and two of those attorneys had no prior discipline for failing to cooperate with the Director. *See Hansen*, ___ N.W.2d at ___, 2015 WL 4637375, at *1 (stating attorney had a prior private probation based, in part, on failing to cooperate with the Director's investigation); *Edinger*, 700 N.W.2d at 467 (stating the attorney had no prior discipline).[2] Additionally,

---

[2]    Our decision in *Schutz* does not identify Schutz's disciplinary history. *See* 846 N.W.2d at 82. A review of the petition for disciplinary action in that case, however, reveals Schutz had one prior admonition for lack of competence and diligence.

Schulte's failure to cooperate was particularly serious as it prevented the Director from determining if client funds were at risk. As a result, suspension for more than 90 days before Schulte may file a petition for reinstatement is warranted.[3]

Based upon the specific facts and circumstances of this case, we conclude that the appropriate sanction for Schulte's misconduct is an indefinite suspension with no right to petition for reinstatement for a minimum of 4 months.

Accordingly, we order that:

1.    Respondent Frank Arend Schulte is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, with no right to petition for reinstatement for 4 months from the effective date of the suspension.

2.    Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs pursuant to Rule 24, RLPR.

3.    Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the professional

---

[3]    In support of his position that the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 6 months, the Director cites *In re Grzybek*, 552 N.W.2d 215, 217 (Minn. 1996), in which we indefinitely suspended an attorney with no right to petition for reinstatement for 6 months. The attorney's misconduct in *Grzybek* is different from Schulte's misconduct. *See id.* at 215 (disciplining Grzybek for failing to establish the basis for his fee, to communicate with clients, to promptly return clients' property, and to cooperate with three disciplinary investigations). The Director also cites *In re Anderson*, 712 N.W.2d 180, 180 (Minn. 2006) (order), in which we indefinitely suspended an attorney with no right to petition for reinstatement for 6 months for failing to communicate with clients and cooperate with the Director. Anderson, however, admitted to failing to cooperate with the Director's investigation of six separate complaints.

11

responsibility portion of the state bar examination and satisfaction of continuing legal education requirements, pursuant to Rule 18(e), RLPR.