**IN RE Petition for DISCIPLINARY ACTION AGAINST Richard S. ESKOLA, a Minnesota Attorney, Registration No. 0123699.**

A16-0269

Supreme Court of Minnesota.

Filed: March 15, 2017

Susan M. Humiston, Director, Cassie Hanson, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Richard J. Harden, Richard J. Harden, P.A., Woodbury, Minnesota, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Richard S. Eskola. The Director alleged that Eskola failed to maintain trust account books and records, made false statements to the Director, and mishandled and misappropriated client funds. We appointed a referee, who concluded

that Eskola committed the alleged misconduct and recommended an indefinite suspension of at least 18 months. The sole issue before us is the appropriate discipline. We conclude that the appropriate sanction for Eskola's misconduct is an indefinite suspension with no right to petition for reinstatement for 18 months, a 2-year probationary period upon reinstatement, and a permanent prohibition on being an authorized signatory on a client trust account.

## FACTS

The facts of the case are not in dispute.[1] Eskola was admitted to practice law in the State of Minnesota on October 24, 1980. In 2003, we suspended him for a minimum of 30 days for misappropriating funds from his law firm. *In re Eskola*, 668 N.W.2d 424, 424 (Minn. 2003) (order).

At all times relevant to the current petition, Eskola, a solo practitioner, kept two bank accounts with Wells Fargo, a trust account and a business account. On June 27, 2014, Eskola's trust account became overdrawn. Wells Fargo notified the Director, who investigated the overdraft and audited Eskola's trust and business accounts. The Director sent a letter to Eskola on July 9, 2014, asking for information about the overdrawn trust account.

In his July 15, 2014, response, Eskola explained the circumstances surrounding the overdraft. He said that he received a $2,500 retainer from a client in accordance

with an oral fee agreement. The retainer consisted of a $1,500 check as an advance on his attorney fees and a $1,000 check as an advance on the costs of the client's appeal. He deposited the $1,500 check into his trust account and the $1,000 check into his business account. Eskola then wrote a check for $630 to the court reporter in the case. Eskola stated that it was his "intention to write that check out of [his business] account with the $1,000 deposit [he] had put in for costs." Eskola, however, wrote the check on his trust account. Eskola did not realize his mistake until months later when the court reporter cashed the check, causing Eskola's trust account to become overdrawn.

Eskola admitted that he failed to realize the mistake that caused the overdraft because he was not preparing the required trial balance and reconciliation reports for his trust account and was not maintaining the required contemporaneous check register or general ledger for his business account. Eskola's failure to maintain the required trust account books and records violated Minn. R. Prof. Conduct 1.15(c)(3) and 1.15(h), as further interpreted by Appendix 1 thereto.[2]

After receiving Eskola's letter explaining the overdraft, the Director wrote to him on October 1, 2014, and stated that his deposit of client funds into his business account violated Minn. R. Prof. Conduct 1.15(a).[3] The Director told Eskola to imme-

---

1. Our recitation of the facts is taken from the referee's factual findings and conclusions. Eskola ordered a transcript of the proceedings before the referee. Neither party, however, has challenged any of the referee's factual findings or conclusions before our court.

2. "A lawyer shall ... maintain complete records of all funds ... of a client ... coming into the possession of the lawyer...." Minn. R. Prof. Conduct 1.15(c)(3). A lawyer "engaged in the private practice of law shall

maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law, and to establish compliance with paragraphs (a) through (f)." Minn. R. Prof. Conduct 1.15(h).

3. "All funds of clients ... held by a lawyer ... in connection with a representation shall be deposited in one or more identifiable trust accounts." Minn. R. Prof. Conduct 1.15(a).

diately discontinue depositing unearned client cost advances and fees into his business account. The Director also asked whether it was Eskola's routine practice to deposit client funds into his business account. In an October 20, 2014 reply, Eskola stated "[i]t was not [his] intention to deposit [the client's] cost advance into [his business] account and it is not [his] routine practice to deposit client cost advances into that account." This statement, however, is directly contradicted by Eskola's previous letter, which said that he intentionally deposited unearned client cost advances into his business account.

Additionally, the Director's investigation revealed that Eskola failed to safeguard client property by routinely depositing client funds, including unearned fees and cost advances, into his business account, in violation of Minn. R. Prof. Conduct 1.15(a) and 1.15(c)(2).[4] From July 18, 2013, to April 1, 2015, Eskola deposited at least $18,217 in cost advances and unearned attorney fees from 26 clients into his business account without a written fee agreement authorizing him to do so. Eskola made seven deposits of client funds, totaling $3,878, into his business account after the Director instructed him to stop this activity.

Eskola's statements to the Director that it was not his intention to deposit the client's cost advance into his business account, that he did not make a regular practice of depositing unearned client cost and fee advances into his business account, and that he would cease this practice were false. Eskola made these false statements to conceal from the Director his failure to safeguard client property. Eskola's false statements violated Minn. R. Prof. Conduct 8.1(a) and 8.4(c).[5]

In addition to failing to safeguard client funds, Eskola knowingly and intentionally misappropriated client funds from his business and trust accounts, in violation of Minn. R. Prof. Conduct 1.15(a), 1.15(c)(2), and 8.4(c). From July 2013 to May 2015, the balance in Eskola's business account was repeatedly less than the total amount of client funds that Eskola should have been holding in that account. Eskola caused or increased these shortages [6] by making dozens of payments for his personal and business expenses that exceeded the amount of his own funds in his business account.[7] There were numerous instances in which a shortage was created or increased by withdrawals from the account or by checks made directly payable to Eskola. The shortages ranged from as little as $0.28 on September 18, 2013, to as much as $2,154.12 on April 8, 2014.[8] The

4. "A lawyer shall ... identify ... properties of a client ... promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable." Minn. R. Prof. Conduct 1.15(c)(2).

5. "[A] lawyer ... in connection with a disciplinary matter[] shall not ... knowingly make a false statement of material fact." Minn. R. Prof. Conduct 8.1(a). "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Minn. R. Prof. Conduct 8.4(c).

6. A shortage differs from a negative account balance when, as here, a positive account

balance is insufficient to cover total client funds.

7. The referee made no findings regarding the exact number of times that Eskola created or increased a shortage in his business account by using client funds to pay his personal or business expenses. At oral argument, the Director stated that shortages were created or increased 49 times. Regardless, Eskola does not dispute that he engaged in numerous transactions that created or increased a shortage in his business account.

8. The Director states that the greatest shortage at any one time was $2,119.12. This figure, however, does not account for a $35

shortages fluctuated because Eskola would intermittently deposit his own funds into the account to cover a shortage.[9] Eskola repaid all client funds that he took from his business account.

Eskola also misappropriated funds from two clients from his trust account. Between March 28, 2014, and July 28, 2014, Eskola misappropriated funds belonging to one client by disbursing fees to himself that were greater than the fees that he had actually earned. At its height, this misappropriation reached $1,345. Eskola eventually earned all the fees that he had disbursed to himself.

Eskola similarly misappropriated funds during his representation of another client in a marriage dissolution proceeding. Eskola received a $1,500 retainer from this client, who had agreed to pay Eskola at a rate of $210 per hour. From December 3, 2013, to December 18, 2013, Eskola disbursed $1,400 of the retainer to himself, even though he had only provided 1.5 hours ($315 worth) of services to the client. Eskola ultimately refunded the retainer, less the $315 that he was owed, after the client reconciled with his spouse.

The referee found that Eskola's disciplinary history, his cumulative acts of present misconduct, and his continued deposit of client funds into his business account after the Director told him to stop this practice were aggravating factors. The referee also found four mitigating factors: (1) Eskola was remorseful; (2) he made full restitution of the misappropriated funds; (3) the nature of his misappropriation—

temporarily borrowing small amounts of client funds until he could replace them—showed that he was not motivated to permanently deprive clients of their funds; and (4) he had a history of pro bono and other volunteer work and had an otherwise good character.

Based on these findings, the referee recommended that Eskola be indefinitely suspended from the practice of law for a minimum of 18 months. In addition, the referee recommended that, if reinstated, Eskola should not be permitted to handle client fund without supervision for at least 2 years.

## ANALYSIS

██ The parties disagree as to the appropriate discipline that we should impose. The Director agrees with the referee's recommendation to indefinitely suspend Eskola for a minimum of 18 months, with a 2-year supervised probationary period if he is reinstated. Eskola, on the other hand, argues that the appropriate discipline is a 90-day suspension, with 2 years of supervised probation upon reinstatement.

██ "Although we place great weight on the referee's recommended discipline, we retain ultimate responsibility for determining the appropriate sanction." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010) (citing *In re Grigsby*, 764 N.W.2d 54, 62 (Minn. 2009)). "The purpose of disciplinary sanctions is 'not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future mis-

---

overdraft fee imposed on the account, bringing the total shortage to $2,154.12.

9. The referee made no findings regarding the total amount of client funds that Eskola misappropriated from his business account. At oral argument, the Director argued that the total amount of money Eskola misappropriated was close to $29,000. The Director noted,

however, that this figure "double counts" client money that Eskola withdrew from his business account, repaid by making a deposit of his own funds into the account, but later withdrew again. The total amount of unearned client funds that Eskola deposited into his business account over the roughly 2-year period was $18,217.

conduct by the disciplined attorney as well as by other attorneys.'" *In re Schulte*, 869 N.W.2d 674, 677 (Minn. 2015) (quoting *Rebeau*, 787 N.W.2d at 173). In determining the appropriate sanction in an attorney discipline matter, we "consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). Additionally, although we look to similar cases to ensure that the discipline imposed is consistent, we "impose discipline on a case-by-case basis after considering both aggravating and mitigating circumstances." *In re Plummer*, 725 N.W.2d 96, 99 (Minn. 2006). We address each of the four factors in turn, then analyze the aggravating and mitigating factors in this case, and finally examine similar cases to determine the appropriate sanction for the misconduct committed in this case.

## I.

Regarding the nature of Eskola's misconduct, his most serious misconduct was the intentional misappropriation of client funds. We have held that "misappropriation of client funds [is] a particularly serious violation." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). Misappropriation of client funds occurs when "'funds belonging to a client are not deposited in a trust account and are used for any purpose other than that specified by the client.'" *Id.* (quoting *In re Westby*, 639 N.W.2d 358, 370 (Minn. 2002)). Eskola misappropriated client funds by depositing these funds into his business account and then using those funds for purposes other than those specified by the client. In addition, Eskola misappropriated funds from two clients by disbursing unearned attorney fees to himself.

■ The referee found, however, that Eskola did not intend to permanently deprive his clients of their funds. This "borrowing" is still misappropriation. *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011) ("'[B]orrowing' from client funds, no matter how temporary or no matter how seemingly 'safe,' is misappropriation and is not to be countenanced." (quoting *In re Gubbins*, 380 N.W.2d 810, 812 (Minn. 1986))). Because misappropriation is such serious misconduct, we "generally disbar attorneys who misappropriate client funds." *In re Wentzel*, 711 N.W.2d 516, 520 (Minn. 2006). When, however, the attorney shows substantial mitigating circumstances, we have imposed lengthy suspensions instead. *Id.* at 521.

In addition to misappropriating client funds, Eskola also made false statements to the Director, failed to safeguard client property, and failed to maintain the required trust account books and records, all serious misconduct. *See Schulte*, 869 N.W.2d at 677-78 ("We have suspended attorneys for trust account violations even when there was no evidence they intended to deceive their clients or that their trust account violations harmed any clients."); *In re Harrigan*, 841 N.W.2d 624, 629 (Minn. 2014) (stating that "[m]isrepresentation is also serious misconduct" and that "'making misrepresentations demonstrates a lack of honesty and integrity, and warrants severe discipline'" (quoting *Lundeen*, 811 N.W.2d at 608)); *In re Montez*, 812 N.W.2d 58, 68 (Minn. 2012) ("Failure to maintain and properly use a trust account is a serious violation of the Rules of Professional Conduct. . . .").

## II.

■ Having determined that Eskola's misconduct was serious, we next address the cumulative weight of these violations. In examining this factor, "[w]e look at the

conduct giving rise to discipline as a whole, and have recognized that 'the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline.' " *Montez*, 812 N.W.2d at 69 (quoting *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004)). "[W]e distinguish 'a brief lapse in judgment or a single, isolated incident' from 'multiple instances of mis[conduct] occurring over a substantial amount of time.' " *In re Stoneburner*, 882 N.W.2d 200, 206 (Minn. 2016) (quoting *In re Severson*, 860 N.W.2d 658, 673 (Minn. 2015)).

Eskola committed multiple instances of misconduct over a substantial period of time. Eskola's misconduct occurred over a 2-year period, from July 2013 to May 2015. During this time, Eskola improperly deposited funds from at least 26 clients into his business account, and he continued to do so even after the Director informed him that this conduct violated the Rules of Professional Conduct. Eskola engaged in dozens of acts of misappropriation of client funds during this same time period. He also failed to maintain trust account books and records from at least March 25, 2014, to June 27, 2014, and he made false statements to the Director to hide his misconduct. The cumulative nature of Eskola's misconduct warrants severe discipline.

### III.

Next, we must determine whether, and to what extent, Eskola's misconduct harmed the public or the legal profession. In evaluating these factors, we have considered how many clients were harmed and the extent of the clients' injuries. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). Eskola's misappropriation did not cause financial harm to any clients because Eskola either deposited his own funds into his business account to replace client funds that he had misappropriated; earned advanced attorney fees that he had already disbursed to himself; or refunded unearned, advanced attorney fees that he had disbursed to himself. *See Fairbairn*, 802 N.W.2d at 743 ("The lack of harm to clients ... is a factor that informs our determination of the appropriate sanction."). Nevertheless, "the misappropriation of client funds, by its very nature, harms ... the public at large [and] the legal profession." *In re Ruttger*, 566 N.W.2d 327, 331 (Minn. 1997). "Misappropriation of funds entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Rooney*, 709 N.W.2d 263, 270 (Minn. 2006).

Eskola's other misconduct also harmed the public and the legal profession. *See In re Samborski*, 644 N.W.2d 402, 408 (Minn. 2002) (concluding that making false statements to the Director during the course of a disciplinary investigation undermines the public's trust in the legal profession); *In re Beal*, 374 N.W.2d 715, 716 (Minn. 1985) ("The maintenance of proper trust account records is vital to the practice of the legal profession, since it serves to protect the client and avoid even the appearance of professional impropriety.").

### IV.

▮ We must next examine any aggravating and mitigating factors, the presence of which can affect the appropriate sanction. *See Fairbairn*, 802 N.W.2d at 742. The referee found three aggravating factors and four mitigating factors.

▮ The first aggravating factor found by the referee was Eskola's disciplinary history. An attorney's disciplinary history is an aggravating factor. *In re Kurzman*, 871 N.W.2d 753, 758 (Minn. 2015). We

previously suspended Eskola for a minimum of 30 days for misappropriating fees belonging to his law firm. *Eskola*, 668 N.W.2d at 424. The referee correctly placed greater weight on this aggravating factor because of the similarity between Eskola's current misconduct and his prior misconduct. *See In re Cutting*, 671 N.W.2d 173, 175 (Minn. 2003) ("This court has imposed more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined.").

. Second, the referee concluded that Eskola's continued practice of depositing client funds into his business account after the Director instructed him to discontinue the practice was an aggravating factor. This finding suggests that the referee believed that Eskola's intentional violation of the rules aggravates his misconduct. This determination is appropriate. *See In re Ulanowski*, 800 N.W.2d 785, 802 (Minn. 2011) ("Intentional misconduct can aggravate a violation of the rules.").

■■ Third, the referee found as an aggravating factor the "cumulative acts of the present misconduct." Although multiple acts or a pattern of misconduct may properly influence the cumulative weight analysis, discussed above, they cannot also serve as an additional aggravating factor. *See In re Fru*, 829 N.W.2d 379, 390 n.7 (Minn. 2013) (refusing to consider the attorney's multiple acts of misconduct over an extended period of time as an aggravating factor because that factor "overlap[ped] with our consideration of the cumulative weight of [the attorney's] disciplinary violations"). Because we have already considered the cumulative weight of Eskola's misconduct, we do not rely on this aggravating factor in determining the appropriate discipline. *See In re O'Brien*, 809 N.W.2d 463, 466 n.9 (Minn. 2012) ("We caution referees not to rely on the

*same* acts . . . to support both a finding of attorney misconduct and the existence of an aggravating factor."). Accordingly, only two aggravating factors are relevant to determining the appropriate discipline here.

The referee also found four mitigating factors, which influence the appropriate sanction in this case. First, Eskola was remorseful for his actions. *See Severson*, 860 N.W.2d at 670 ("An attorney's remorse can be a mitigating factor in considering the appropriate discipline."). Second, Eskola repaid all misappropriated funds; no client sustained any financial loss because of his misconduct. *See In re Aitken*, 787 N.W.2d 152, 163 (Minn. 2010) ("We have generally 'considered the absence of harm to clients to be a mitigating factor in discipline cases.'" (quoting *In re Overboe*, 745 N.W.2d 852, 867 (Minn. 2008))). Third, Eskola's misappropriation was not motivated by a desire to permanently deprive his clients of their funds. *See Rooney*, 709 N.W.2d at 272 (recognizing the lawyer's intent as a mitigating factor when the lawyer who misappropriated client funds "intended only to temporarily borrow his clients' funds, not to permanently defraud his clients"). Finally, Eskola's history of pro bono and volunteer work with his local community, in addition to testimony of his otherwise good character, is also a valid mitigating factor. *See id.*

## V.

■■ In determining the appropriate discipline, we look to similar cases to ensure consistency in our disciplinary decisions. *In re Nathanson*, 812 N.W.2d 70, 80 (Minn. 2012). Several cases support the referee's and Director's recommendation of a lengthy suspension. In *Fairbairn*, we imposed an 18-month suspension upon an attorney who misappropriated a total of $144,000 from her law firm's trust account.

802 N.W.2d at 738-39. Fairbairn misappropriated the funds by transferring a total of $60,000 from the firm's trust account into the firm's operating account over a 3-day period and later transferring an additional $84,000 from the firm's trust account to the firm's operating account over the course of one month. *Id.* These funds were used to cover the firm's operating expenses. *Id.* Fairbairn had already returned all of the money that had been transferred from the trust account before being contacted by the Director regarding an overdraft in the operating account. *Id.* No aggravating factors were present, but we identified several mitigating factors, including that Fairbairn experienced extreme stress, was remorseful, made restitution, and did not financially harm any of her clients. *Id.* at 740, 745-47.

Similarly, in *Rooney*, an attorney misappropriated $27,700 through 17 transactions, ranging in amount from $350 to $4,000, over the course of a year. 709 N.W.2d at 266. We identified seven mitigating factors, including Rooney's "full restitution before the Director contacted him about the overdraft;" "his remorse;" and "his good character and significant contributions to the community through pro bono legal work and other volunteer activities." *Id.* at 271. "Balancing the severity of Rooney's misconduct against the numerous significant mitigating factors present in his case, we h[e]ld that the appropriate sanction ... [was] an 18-month suspension." *Id.* at 272-73.

*In re Hanvik*, 609 N.W.2d 235, 236 (Minn. 2000), also supports a lengthy suspension for Eskola's misconduct. There, an attorney misappropriated less than $5,000 in client funds; made false statements to clients, the Director, and a Medicare claims agent; failed to communicate with a client; and had inadequate trust account books and records. *Id.* at 237, 241. We

identified two mitigating factors, including that Hanvik made partial restitution of funds to the affected clients, and one aggravating factor. *Id.* at 239, 241. Based on these conclusions, we imposed a 2-year suspension. *Id.* at 242.

Eskola argues that other cases weigh in favor of a lesser sanction. We disagree. Eskola asks us to consider *In re Sheffey*, 522 N.W.2d 927 (Minn. 1994) (order), *In re Stolpestad*, 485 N.W.2d 710 (Minn. 1992) (order), and *In re Sand*, 431 N.W.2d 107 (Minn. 1988) (order). Because none of these cases involved misappropriation of client funds, they are all inapposite.

Eskola also relies on *In re Reiter*, 567 N.W.2d 699 (Minn. 1997); *In re Ulstad*, 507 N.W.2d 614 (Minn. 1993); and *In re Copeland*, 505 N.W.2d 606 (Minn. 1993). In *In re Reiter*, Reiter violated Minn. R. Prof. Conduct 1.15(a) by issuing two checks totaling $70 on behalf of a client before depositing funds into Reiter's trust account to cover the checks. 567 N.W.2d at 702. As a result, for a period of 3 months, funds belonging to other clients were used to pay that client's bills. *Id.* Reiter also failed to pay a law-related debt, failed to maintain required trust account books and records, and falsely certified that he maintained required trust account books and records. *Id.* at 701-02, 704-05. Reiter did not attempt to conceal any of his misconduct. *Id.* at 706. We held that the appropriate sanction was a public reprimand and placement on probation for 2 years. *Id.*

The situation in *Reiter* is distinguishable from Eskola's misconduct. Unlike Reiter, Eskola engaged in dozens of acts of misappropriation for his personal use over the course of almost 2 years. In addition, Eskola's misappropriation violated Minn. R. Prof. Conduct 8.4(c) (prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation"), and he attempted to conceal his misconduct when the Director in-

vestigated his trust account practices. These factors demonstrate that Eskola's conduct is more serious than the conduct described in *Reiter*.

Next, in *In re Ulstad*, we publicly reprimanded an attorney who determined that he qualified for a $30,000 loan from a bank at an annual interest rate of 10%, but instead of taking out the bank loan, he borrowed $30,000 from an investment account he managed for an elderly client suffering from Alzheimer's disease without the client's knowledge or consent. 507 N.W.2d at 614 (order). The loan had terms that were favorable to the client, and the attorney had made payments that included interest at an annual rate of 10% to the client for nearly 3 years.[10] *Id.* The attorney repaid the money after the Director asked about the matter during an unrelated inquiry, and he did not attempt to conceal the misconduct from the Director. *Id.*

*Ulstad* is also distinguishable from Eskola's misconduct. Unlike Ulstad, who engaged in a single dishonest act by borrowing client funds without the client's knowledge or consent, Eskola repeatedly misappropriated client funds over the course of 2 years. Eskola also made false statements to the Director in an attempt to conceal his misconduct, continued to mishandle client funds even after the Director told him that such conduct was improper, and has a prior disciplinary history for similar misconduct. As a result, Eskola's misconduct is more severe than the attorney's actions in *Ulstad*. *Ulstad* also involved a stipulation for discipline, *see* 507 N.W.2d at 615, and in such cases, we "give some deference to the Director's decision to enter into [the] stipulation," *see In re Riehm*, 883 N.W.2d 223, 233

(Minn. 2016) (citation omitted) (internal quotation marks omitted).

Finally, in *In re Copeland*, the attorney "misappropriated client funds, commingled personal and client funds, failed to maintain proper [trust account] books and records, falsely certified [ ] that he [kept] proper [trust account] books and records, represented a client even though he was aware of a conflict of interest [ ], neglected a client matter," and "knowingly contacted a represented party without the consent of that party's attorney." 505 N.W.2d at 606-07. Copeland drew checks from his trust account to pay for club membership dues and to buy a car and a boat. *Id.* at 608. No client lost money as a result of the misappropriation, and Copeland repaid the money to the account before the Director began investigating the misconduct. *Id.* We imposed a 90-day suspension for Copeland's misconduct. *Id.* at 609.

As with the other cases we have discussed, we conclude that Eskola's misconduct is more serious than in *Copeland*. The referee in this case found that Eskola intentionally misappropriated client funds, in violation of Minn. R. Prof. Conduct 8.4(c) (prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation"), whereas the referee in *Copeland* found that the attorney "did not intentionally misappropriate client funds" and "did not find a violation of Rule 8.4(c)," *Copeland*, 505 N.W.2d at 608. Eskola also tried to hide his misconduct by making false statements to the Director and continued to deposit client funds into his business account even after he was told by the Director to stop. And Eskola has a prior disciplinary history, in contrast to Copeland.

10. *Ulstad* involved a stipulation for discipline in which the attorney admitted the allegations in the petition for disciplinary action. 507 N.W.2d at 615. The petition for disciplinary

action acknowledged that the loan included terms that were favorable to the client. *Id.* at 614.

Eskola's misconduct is more similar to the misconduct in *Fairbairn*, *Rooney*, and *Hanvik* than to the cases relied upon by Eskola. Because of the nature and extent of Eskola's misconduct, a 90-day suspension would be insufficient to protect the public and the judicial system. Instead, balancing the nature and extent of Eskola's misconduct with the aggravating factors against the mitigating factors found by the referee, we hold that the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 18 months, along with a 2-year supervisory period if Eskola is readmitted, as the referee recommended. But we will strengthen the discipline recommended by the referee by directing that Eskola never again handle client trust funds.

Accordingly, we order that:

1. Respondent Richard S. Eskola is indefinitely suspended from the practice of law, effective 14 days from the date of this opinion, with no right to petition for reinstatement for a period of 18 months.

2. Eskola may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility and satisfaction of continuing legal education requirements. *See* Rule 18(e)-(f), RLPR.

3. If Eskola is reinstated, he shall be subject to supervised probation for a period of 2 years under such terms as the court may then impose.

4. Eskola is permanently prohibited from being an authorized signatory on a client trust account.

5. Eskola shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals),

and shall pay $900 in costs, *see* Rule 24(a), RLPR.